We turn now to the seventh case of the day, United States v. Lindsey, Appeal No. 25-2086. And we welcome Mr. Yeti to the podium. May it please the Court, a criminal defendant is guaranteed the right to effective assistance of counsel during the prosecution phase of their sentencing. Laci Lindsey was denied this right through her counsel's deficient performance, including failing to properly raise objections where meritorious grounds existed, and entirely failing to develop and present a mitigating case on her behalf to the Court, resulting in her receiving a higher sentence than her co-defendant, who is not only more culpable in the charge defense, but also had numerous criminal convictions on his record whereas Ms. Lindsey did not. On the first point, Ms. Lindsey's counsel failed to object to the inclusion of prior methamphetamine drug weight within the charge defense when this additional weight did not constitute the same course of conduct or a common scheme or plan as the charge defense. The course of conduct analysis looks at the similarity, regularity, and time interval of the offenses. Here, these prior drug transactions were very dissimilar from the charge defense, as the average transaction was 60 grams, none exceeded 86, and the charge defense rose to the level of over 400 grams. Similarly, there was no regularity within these prior drug transactions, as there were five transactions that took place over an 11-month period, where there was still a nine-month interval in between. So, very front-loaded and back-loaded, making them far less—defeating the idea that they were regular. Similarly, under the common scheme or plan prong, the courts look at whether the conduct was substantially connected in common accomplices, modus operandi, victim, and purpose. Here, there were no common accomplices between the prior transactions and the charge defense, as the prior transactions only hold that Ms. Lindsay acted alone. Whereas here, she herself was the accomplice to her co-defendant, Mr. Snyder, who actually conducted the sale, whereas she only facilitated it by driving him to the meet and connecting him with the buyer. Does the record reflect whether or not the defendant received any compensation from the—with regard to that last sale? To my knowledge, there's nothing in the record to indicate that, only that she put the buyer in contact with Mr. Snyder and drove him to the sale. And for the other sales, the ones that were in her home, as I recall, she was given the money directly. Is that correct? Yes, to my knowledge. Similarly, the modus operandi between the prior sales and the charge defense are completely different, as Ms. Lindsay conducted the sales in the prior transactions, yet here she only facilitated and put the two into contact with each other. And likewise, even the purpose of these are substantially dissimilar, as in the prior transactions, she was conducting the sale herself and receiving payment, whereas, as Your Honor mentioned or brought up, there's nothing in the record to indicate that she received any financial gain from this charge defense. If we—let's say, hypothetically, we agree with you that the prior sales at her home are not—do not constitute relevant conduct for her April 28th sale, okay? That would—would that basically nullify any reliance upon the premises enhancements? The premises enhancements were based upon the prior transactions? It would, Your Honor, because the premises enhancement would only apply if any of the drug sales were used from her actual premises, whereas in the charge defense, the sale was conducted a mile or two away from her actual premises. So if the score were to agree on course of conduct, then the premises enhancement automatically wouldn't apply. How would you respond to the government's argument that, you know, while the last transaction, there may have been kind of details that were different, that basically in the end, the defendant was facilitating the CI from—with the CI's desire to obtain drugs? I would respond that when you look at the actual factors that courts have laid out as relevant to the sentencing guidelines, you do start to see those discrepancies between the actual modus operandi and the commonality of the actual—of the actual sales, whereas under course of conduct and common schemer plan, we're looking at whether they're so substantially connected that they can be thought of as effectively the same offense. Here we have the difference between selling drugs and the difference between connecting two people to buy drugs or driving one to a meet where those ought to be considered as separate charge defenses and not lumped in together. So if at the 428 sale, the CI gave Ms. Lindsay the money, okay, and she's the one that said, okay, well, now you owe me and gave the money. In that instance, would the government have a better argument in your view than what it would have now? That would certainly be a better argument because then you could say the purposes are substantially similar where there's clear evidence of a financial gain in both cases. However, it's still worth noting that the prior transactions differed so consistently in the weight as the final sale and just the fact of she didn't conduct it from her home. She was an accomplice to Mr. Snyder, in this case conducting the sale, that there are still substantial differences that would likely render that not the same course of conduct. On the premises enhancement, the court looks at the frequency and significance of the drug-related activity as weighed against the lawful purposes of the premises. Here, there's no hard-line rule about how many sales over how much time would kick in the premises enhancement. However, we do have United States versus Kraft, which held that three sales over a five-month period was too attenuated or too infrequent to apply the premises enhancement. And as a matter of sales per month, that's even greater than this case here. But in Kraft, there was no evidence that the drugs were stored at the premises and I don't think, as I recall, they didn't find any drug distributing paraphernalia on the premises. That's true, Your Honor. With regard to the storage of drugs in the house, that is still consistent with Ms. Lindsay's personal use of the drugs and there's no evidence to suggest that these drugs were specifically marked for sale. This is strengthened by the fact that Ms. Lindsay only ever— there's only evidence that she ever sold to one confidential source. So there's a reasonable inference that there was some special relationship with that source that she felt comfortable conducting business directly out of her home. And as to the tools of the trade, the same is true where she might store the tools of the trade from her home but not necessarily conduct her drug-related operations from her home using those tools but merely have them there as a matter of storage. I see I'm into my rebuttal time, if I may reserve the rest. You may. Thank you, Mr. Yenny. Mr. Whalen, good morning. May it please the Court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. Ms. Lindsay has not shown that her counsel rendered constitutionally deficient performance and so this Court should affirm. Ms. Lindsay's argument on appeal is that the enhancements were inappropriate but that's not the question before this Court. The question before the Court is whether counsel was so deficient in failing to raise these particular objections that his representation fell below the Sixth Amendment standard. So whether there was an egregious mistake that put him below the objective reasonableness under professional norms. And that's not the case here. These drugs were all part of relevant conduct or a reasonable counsel could so conclude. Judgely as to the actual drug sale that was charged, what happens is the CI reaches out to Ms. Lindsay with whom he's had regular interactions and says, I'd like to increase my weight. She then puts him in touch with Mr. Snyder, her codependent. She's the one that facilitates the deal. When the CI can't reach Mr. Snyder, she's the one that tells him, all right, I'll make it happen. She drives Snyder to the deal which takes place one mile from her house and she's the one that's literally escorting him there. I don't think there is evidence in the record that she's the one that physically took the money but clearly she's trying to keep her client, the CI, happy as it relates to just continuing to ply him with the amount of drugs that he asked for. To the extent there's a discrepancy in the weight, that's because that's what the CS or the CI, the confidential informant, asked for. These were all part of the same regular course and scheme and conduct. They were all relevant conduct or at a minimum counsel was not deficient for failing to object along those lines. The district court found they were part of the same course and conduct at the original sentencing. Even if he was deficient for failing to raise the point, there's no prejudice. The notice of appeal, right? It seems kind of peculiar because it's an appeal from the district court's denial of a 2255 petition, right? If the district court denied the certificate of appealability, presumably in a normal course, then the defendant would file a request for a certificate of appealability with us. Instead, we have this appeal. Is this basically, should we construe this as a request for certificate of appealability? That is a good question. I think this court could do it that way. I think the request for certificate of appealability is only applied in the 2255 proceedings. We're not in 2255 proceedings at this point. Once the district court found counsel was ineffective for failing to file the notice of appeal, that reentered the judgment in the criminal case. So we're back on a direct appeal. So she's not technically appealing the denial of the 2255 as it relates to the sentencings. What she's appealing is it should be a direct appeal, and that's why we put in the beginning of our brief this issue of kind of whether she wants to pursue a 2255 at this point. I understand why she's doing it because it would be law of the case. If she were to file an Anders or file some substantive appeal that's going to be barred by our appellate waiver, go back down, raise the same point again. The district court presumably is going to deny the 2255 based on the same grounds for the same reasons previously stated. Then we would get to a certificate of appealability. I don't think she needs a certificate of appealability on this case because it is a direct appeal, but I do think she then runs into a problem because she's raising an ineffective assistance claim on her direct appeal. The record is probably developed enough that if she wants to proceed with that she can. Again, that's her choice, but we would enforce law of the case were she to continue with the 2255. This court would decide the merits and then remand down. On the record question, Mr. Whelan? Yes. I mean, part of the weirdness, this is just an unusual posture that we're in. It's not normal. Part of the reason it's often difficult to bring an IAC claim on direct appeal is that there is no record. I don't think this necessarily makes a difference in this case, but if there was a record developed in her 2255 of the IAC claims, I presume it would be, I guess, inappropriate for us to look at that here in her direct appeal where, I mean, the whole idea here is that she gets to set back to the same legal position she was in as if she had filed this appeal after her conviction was first final. So I presume in this situation probably the thing to do would be to limit ourselves to the record in the underlying criminal case setting aside any record that exists in the 2255. Yes. I actually hadn't thought about that, Your Honor. I think that might be one way to approach it. What's kind of strange about this, as Your Honor noted, is we're in a strange procedural posture. The record consists entirely of her affidavit for the 2255 motion, which kind of due to the strange nature of 2255 proceedings opens this kind of parallel civil matter, but the affidavit is still on the docket, right? And so theoretically this court could consider it. I don't think it moves the ball one way or the other on this particular case, so I don't think the court needs to kind of delve into these strange issues about what it can and can't consider on a 2255 denial that then results in a direct appeal. And, in fact, we don't have any authority telling us we cannot look at that in this unusual posture that we find ourselves in right now. I'm unaware of any authority along those lines. The only time I've dealt with an ineffective assistance claim outside of a 2255 is it's a Rule 33 motion where a defendant seeks a new trial or seeks, I guess, the other time is ineffective assistance and failure to negotiate the plea agreement, and they're trying to withdraw their plea. So those are still two direct criminal proceedings, though, and it's not 2255s per se. It's just a kind of strangely raised ineffective assistance of counsel claim. So could she raise, like, when she got the right to appeal in her 2255, we went back to the beginning, or we went back to the middle, to the direct appeal. And then after this direct appeal is resolved and her conviction, let's say, again becomes final at some point, could she then file another 2255? She could file another. There is another opportunity to file a 2255. It's second in time, but it wouldn't be second or successive for the purpose of a 2255. I don't think under this court's case in people she'd be able to raise as a separate ineffective assistance of counsel claim. And so I don't know what she would be able to bring in a separate 2255 or in an initial 2255 that wouldn't be procedurally defaulted or barred by her appellate waiver, but that option does exist. It's not an impermissible second or successive 2255 as 2255H uses the phrase. So with that being said, I'm happy to answer any other questions on the merits. However, because Ms. Lindsay has not shown counsel rendered deficient performance or any prejudice under the Strickland standard, which is what's before this court, we ask that you affirm her sentence. Okay. Thank you. Thank you. Mr. Yenny. Thank you. I'd like to briefly address the point about counsel's lack of preparing a mitigating case for Ms. Lindsay. Counsel failed to submit the pre-sentence report to her ahead of the sentencing hearing and took only a few minutes to go over a 23-page document at the start of the hearing. Counsel entirely failed to submit a sentencing memorandum on Ms. Lindsay's behalf because they had the deadline in his office calendar wrong. Counsel received character letters from Ms. Lindsay and simply refused to submit them to the judge because, quote, the judge doesn't read them, which Judge Lichty in the 2255 motions called, quote, difficult to see it as anything but deficient. And counsel completely failed to prepare Ms. Lindsay for her allocution. All of these combined helped to, you can see the prejudice in all of these combined, comparing her sentence to Mr. Snyder's, who, again, had prior convictions for methamphetamine sale and firearm possession and who was the actual principal actor in this case. And the only difference is that Mr. Snyder was able to present his mitigating case to the court, whereas Ms. Lindsay was not. And Judge Miller, in the sentencing hearing, specifically points to that there's nothing in the record to evaluate the likelihood of her staying clean or not using drugs, which he references as a large part of her upward sentence from Mr. Snyder. Mr. Eni, you know, we talked a bit with the government with regard to kind of the procedural posture of this case. And you know that, generally speaking, you know, we recommend that, I think that's probably maybe too weak a word, but we recommend that any claim for ineffective assistive counsel be reserved for or be better brought under a 2255 petition so that the factual record can be developed as opposed to on direct appeal. Here we have this, like, situation where we're dealing with a direct appeal because your client did raise the ineffective assistive counsel claim with regard to this matter below. How do you think we should deal with this? And I see my time has expired. May I answer your question, Your Honor? Yes. So this is brought in a direct appeal primarily because the original 2255, many of these arguments were raised in that, and relief was granted just on the issue of allowing this direct appeal. And I can't fully account for why counsel below chose to pursue a direct appeal rather than a secondary 2255. However, without new evidence coming to light and based on the record at hand and how substantial it is and all the evidence of counsel's deficient performance and prejudice, I think this is just brought straight through with a direct appeal, and we're requesting this court to vacate and remand the sentence. Thank you. Thanks to the parties. Mr. Yanni, we also want to thank you for presenting the case as a law student, and we thank your law school, former law student, congratulations, and your supervisor. You have the thanks of the court. We'll take the case under advisement.